**NAVIERA MERCANTE, S.A. and Lone Star Shipping, Inc., Plaintiffs,**

v.

**NORTHRUP KING CO., Defendant.**

**Civ. A. No. H–78–1697.**

United States District Court,
S. D. Texas,
Houston Division.

June 12, 1980.

---

Brent T. Brooks, Hinds & Meyer, Houston, Tex., for plaintiffs.

G. Byron Sims, Brown, Sims & Ayre, Houston, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CIRE, District Judge.

This is a suit by an ocean carrier and its port agent to recover $10,804.36 in freight and wharfage charges from the defendant-shipper. Since all operative facts are uncontested, the matter is before the Court for decision on stipulated facts and briefs of the parties. Pursuant to Rule 52, Fed.R. Civ.P., the Court enters the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. Plaintiff Naviera Mercante, S.A., a Venezuelan corporation, is an ocean carrier and at all material times hereto owned and operated the vessel M/V RENATA B, which transported 6,600 bags of sorghum seed from Houston, Texas, to Puerto Cabello, Venezuela, shortly after March 22, 1978. (Stipulated Facts 1, 5, 9, 10).

2. Plaintiff Lone Star Shipping, Inc., a Texas corporation, is engaged in business as a steamship agent at the Port of Houston and at all times material hereto, acted as port agent for the M/V RENATA B while it was in the Port of Houston in March of 1978. (Stipulated Facts 2, 6).

3. Defendant Northrup King Co., a Delaware corporation doing business in the State of Texas, is in the business of selling seed for export and was the shipper of the sorghum seed referred to herein. (Stipulated Facts 3, 7).

4. Spies Shipping Corporation, not a party to this lawsuit, was at all material times a bonded Independent Freight Forwarder. (Stipulated Fact 4).

5. On or about March 22, 1978, at the request of Spies Shipping Corporation, Plaintiffs agreed to transport on the M/V RENATA B a shipment of sorghum seed from Houston to Puerto Cabello, Venezuela. The defendant-shipper, Northrup King Co., took no part in selecting the plaintiff-carrier. All contacts and dealings concerning the use of Plaintiffs, Lone Star Shipping and Naviera Mercante, and the formation of the contract of carriage involved only Spies Shipping and Lone Star Shipping. (Stipulated Facts 7, 8).

6. On or about March 22, 1978, the M/V RENATA B loaded the bags of sorghum seed aboard. A prepaid bill of lading was released by port agent, Lone Star Shipping, to the freight forwarder, Spies Shipping, upon departure of the M/V RENATA B from the Port of Houston. Spies Shipping had prepared all shipping documents including the bill of lading marked "freight prepaid." The bill of lading was forwarded to and signed by Lone Star Shipping on behalf of Naviera Mercante and it was returned to Spies Shipping as a due bill specifying the charges that were owing for freight and wharfage. (Stipulated Facts 9, 10, 14).

7. The reasonable value of the freight and wharfage for the aforementioned shipment of sorghum seed was $10,804.36. Defendant Northrup King paid to Spies Shipping the full amount of charges for freight, wharfage, and unloading for such shipment, by check dated March 27, 1978. Neither Naviera Mercante nor Lone Star Shipping have ever received payment of the freight charges from Spies Shipping or anyone else. (Stipulated Facts 13, 14, 16).

8. On April 17, 1978, Northrup King received notification from Lone Star Shipping regarding the non-payment by Spies Shipping of the charges involved in this lawsuit. The first notice mailed to creditors of Spies Shipping of its insolvency was on May 2, 1978. Prior to receiving this notice of insolvency, Naviera Mercante, by its port agent, Lone Star Shipping, made demands upon Spies Shipping for payment of the aforementioned charges. By telex sent on May 8, 1978, Lone Star Shipping demanded payment from Defendant Northrup King of the freight charges. No written demand for payment had previously been made by Naviera Mercante or Lone star Shipping to Northrup King. (Stipulated Facts 18, 19, 20, 21, 22).

9. Northrup King has refused to make payment of the $10,804.36 in freight charges directly to Naviera Mercante or Lone Star Shipping. (Stipulated Fact 23).

10. Both Lone Star Shipping and Northrup King have utilized the services of Spies Shipping on occasions other than the one giving rise to this suit. (Stipulated Facts 24, 26).

### Conclusions of Law

The parties have analyzed cases dealing with the question of a shipper's liability for freight charges when the freight forwarder fails to remit to the ocean carrier the funds provided to the forwarder by the shipper. Plaintiffs' argument for imposing double liability on the shipper arises from dicta in the case of *Compania Anonima Venezolana de Navegacion v. A. J. Perez Export Company*, 303 F.2d 692 (5th Cir.), cert. denied, 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276 (1962), hereinafter referred to as *Perez*. The plaintiffs also rely upon *Bartlett—Collins Company v. Surinam Navigation Company*, 381 F.2d 546 (10th Cir. 1967) which cited the dicta in *Perez* to support holding a shipper liable for unpaid ocean freight where it had already paid the forwarder.

Defendant maintains that the *Perez* dicta is contrary to the overwhelming weight of authority and has been viewed in recent decisions with facts similar to those herein as not controlling.

The decisions favoring the defendant's position that a shipper is not liable to the ocean carrier for freight charges it has already paid to the forwarder begin with *Alcoa Steamship Co. v. Graver Tank & Manufacturing Co.*, 1953 A.M.C. 844, 124 N.Y.S.2d 77 (City Court of New York 1953). That case held that a shipper was not responsible for the forwarder's failure to remit the freight charges where the plaintiff-carrier issued a prepaid bill of lading, in effect extending credit to the forwarder. Next, defendants point to the cases of *Farrell Lines, Inc. v. Titan Industrial, Inc.*, 306 F.Supp. 1348 (S.D.N.Y.1969), affirmed, 419 F.2d 835 (2d Cir. 1969), cert. denied, 397 U.S. 1042, 90 S.Ct. 1365, 25 L.Ed.2d 653 (1970), ("*Farrell*"); *Koninklijke Nedlloyd v. Uniroyal, Inc.*, 433 F.Supp. 121 (S.D.N.Y. 1977), ("*Uniroyal*"); *Inversiones Navieras Imparca, C.A. v. Polysar International, S.A.*, 465 F.Supp. 102 (S.D.Fla.1979), ("*Polysar*"); *West India Industries, Inc. v. Vance & Sons AMC/Jeep*, No. H–79–180 (S.D.Tex., March 14, 1980), ("*West India*"). All of these cases acknowledged the *Perez* dicta and the resultant *Bartlett—Collins* decision. The Courts were asked to hold the shippers liable on the basis of bills of lading which provided for responsibility on the part of the shipper for payment of the freight. Additionally, the plaintiff-carriers argued that the shippers were responsible under the terms of the Shipping Act of 1916, 46 U.S.C. §§ 812, 814–817, or the Transportation Act, 49 U.S.C. §§ 6(7), 906(c). In all cases, the courts declined to impose such absolute liability on the shipper where payment had previously been made to the freight forwarder.

In each of the above-cited cases, relied upon by defendant-shipper herein, although the bills of lading were marked "freight prepaid," the plaintiff-carriers issued and released them without actual prepayment of the freight charges. This transaction was held to result in the extension of credit by the carrier to the freight forwarder, without the shipper's involvement. To allow a carrier "to recast the transaction in a different mold because of the forwarder's insolvency would be most unjust." *Farrell Lines, Inc. v. Titan Industrial, Inc.*, 306 F.Supp. 1348, 1351 (S.D.N.Y.1969), affirmed, 419 F.2d 835 (2d Cir. 1969), cert. denied, 397 U.S. 1042, 90 S.Ct. 1365, 25 L.Ed.2d 653 (1970).

Plaintiffs suggest that the facts herein establish an agency relationship between the defendant-shipper and the insolvent freight forwarder, pointing to a history of prior dealings between the two. They maintain, therefore, that the use of the bill of lading, designated "freight prepaid," identifying the defendant as shipper and the freight forwarder as forwarding agent was consistent with billing for the account of the shipper and not the freight forward-

er. The Court finds this contention contrary to the facts surrounding issuance of the bill of lading herein and the interpretation given such a transaction in the cases of *Farrell, Uniroyal, Polysar*, and *West India, supra*. Whatever the defendant's prior dealings with the freight forwarder involved, it clearly was not a party to the issuance of the bills of lading prior to prepayment of the freight. That the plaintiffs did not delay in notifying defendant of the freight forwarder's non-payment does not change this fact.

Accordingly, the Court concludes that defendant is not liable to the plaintiffs for the ocean freight already paid by defendant to Spies Shipping Corporation. Judgment is entered in favor of defendant and costs are to be assessed against plaintiffs.