**FARRELL LINES, INC., Plaintiff,**

v.

**AMERICAN MOTORISTS INSURANCE CO., Defendant.**

**No. 82 Civ. 3394 (VLB).**

United States District Court, S.D. New York.

June 2, 1983.

Lilly, Sullivan & Purcell, P.C., New York City, for plaintiff.

Harvey Barrison, New York City, for defendant.

MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

I.

Plaintiff, an ocean freight carrier, carried three shipments of goods for which it has not been paid. The bills of lading for these three shipments were marked "ocean freight prepaid." The independent freight forwarder was bonded by defendant surety, in accordance with the surety bond requirements of 46 C.F.R. § 510.15. The freight forwarder, Al W. Lacy, Jr., not a party to this action, received full payment from the shippers with respect to the shipments. The freight forwarder also received commissions from plaintiff carrier with respect to these shipments. Freight forwarder Lacy never remitted the payments from the shippers to the plaintiff, and subsequently went bankrupt. Plaintiff now sues defendant surety for the unpaid shipping charges. Before me are cross-motions for summary judgment.

Plaintiff claims that it is entitled to payment for the freight from defendant surety under the independent freight forwarder's bond which is required by Section 44 of the Shipping Act of 1916, 46 U.S.C. § 841b(c), and 46 C.F.R. § 510.15(a).

Defendant claims that the benefit of the bond does not run to the carrier; that the bond is intended solely for the benefit of the shipper. Defendant also argues that by marking the bills of lading "prepaid" when it had not yet received payment, plaintiff had, in effect, extended credit to the freight forwarder without the approval of the surety. Defendant asserts that plaintiff is estopped from recovery since the surety did not approve the extension of credit. Alternatively, defendant argues that the credit arrangement constitutes a separate unrelated agreement between carrier and forwarder and thus takes it out of the purview of the statutory bond requirements.

For the reasons which follow, plaintiff's motion for summary judgment is granted, and that of defendant is denied. Since the issue presented is one of first impression and the arguments asserted by defendant are not frivolous, plaintiff's request for an award of attorney's fees is denied.

## II.

■ The legislative scheme set forth in the Shipping Act of 1916, specifically 46 U.S.C. §§ 812, 814–817, was designed to insure collection of full freight charges by a carrier. The responsibility of payment is not statutorily imposed on any particular party: "As long as someone is liable for the full amount of the freight, so that there is no overcharge or undercharge, the public interest is protected and the statutes are satisfied." *Farrell Lines Inc. v. Titan Industrial Corp.*, 306 F.Supp. 1348, 1349 (S.D.N.Y.1969) (footnote omitted), *aff'd per curiam*, 419 F.2d 835 (2d Cir.1969), *cert. denied*, 397 U.S. 1042, 90 S.Ct. 1365, 25 L.Ed.2d 653 (1970).

The 1969 *Farrell Lines* case, *supra*, has certain parallels to this case. The plaintiff is the same. In that case and here Farrell allowed extension of credit to a freight forwarder; the freight forwarder was paid by the shipper; the freight forwarder failed to remit payment to Farrell; and the freight forwarder subsequently went bankrupt.

In the 1969 *Farrell* case, plaintiff chose to sue the shipper for recovery of the full freight charge, and was unsuccessful. The court pointed out that collection from the shipper who already paid would amount to absolute liability and double payment. The carrier had accepted the forwarder as the principal on the freight contract and had advanced credit to the forwarder, and could not, because the forwarder became insolvent, recast the transaction:

> Thus, the carrier accepted the forwarder as the principal and obligor on the freight contract. Allowing the carrier to recast the transaction in a different mold because of the forwarder's insolvency would be most unjust....
>
> We find that the carrier made a full and proper charge for the ocean freight and that it extended credit to, and looked for payment from, the forwarder by stamping the bills of lading "Freight Prepaid" and accepting in return the forwarder's signature on the due bills.

*Farrell, supra* at 1351 (footnotes omitted).

Thus in the 1969 *Farrell* case the court used the specific fact of extension of credit to show that the carrier anticipated payment from the forwarder, and thus forwarder was the proper party from whom to seek recovery. It would be ironic if Farrell Lines, having learned the lesson of its unsuccessful 1969 suit, was prevented in 1983 from collecting from the party to whom it truly looked for payment.

Perhaps there would have been no problem in the instant case if Farrell had entered into a formal "Shipper's Credit Agreement" with the forwarder, but its failure to do so is not dispositive. The parties were free, by conduct or agreement, to alter the relevant terms of the bills of lading. *Cf. Med-Span Shipping v. Jerry Jones Mack, Inc.*, 442 F.Supp. 904 (S.D.N.Y.

1978) (where court discusses whether carrier can be obligated to look to consignee for recovery).

The Shipping Act of 1916 is designed to insure that a ship carrier collect full freight charges. 46 U.S.C. § 815; *see Med-Span Shipping v. Jerry Jones Mack, Inc.*, supra at 905. Section 815 provides in relevant part:

It shall be unlawful for any shipper, consignor, consignee, forwarder, broker, or other person, or any officer, agent, or employee thereof, knowingly and willfully, directly or indirectly, by means of false billing, false classification, false weighing, false report of weight, or by any other unjust or unfair device or means to obtain or attempt to obtain transportation by water for property at less than the rates or charges which would otherwise be applicable.

46 U.S.C. § 815.

In *Southern Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982), which pertained to railroad transport under the Interstate Commerce Act, the Supreme Court noted a legislative intent of full freight charge recovery by a railroad carrier, and found the significance of credit rules minimized when full freight recovery was at issue. A railroad carrier had failed to collect all freight charges before releasing shipments. Reversing the Court of Appeals, the Supreme Court held that violation of credit regulations by the plaintiff carrier did not provide defendant shipper with an equitable affirmative defense:

Yet neither the statute under which the regulations were promulgated, 49 U.S.C. § 3(2), nor the regulations themselves intimate that a carrier's violation of the credit rules automatically precludes it from collecting the lawful freight charge. Nor does either contain any words of affirmative defense to a freight charge action. . . . When an administrative agency historically has engaged in comprehensive regulation of an industry's credit practices, the agency's silence regarding an affirmative defense based on

a violation of those regulations must be deemed significant.

The legislative and administrative history of the credit regulations further indicates that this silence was not inadvertent—the intent of the rules was to protect carriers, not to penalize them.

*Southern Pac. Transp. Co.*, 456 U.S. at 344–345, 102 S.Ct. at 1821.

▇ From the foregoing I conclude 1) that a carrier can collect for freight from a forwarder, and 2) that extension of credit and the marking of bills of lading "freight prepaid" do not provide a forwarder with an equitable affirmative defense. Plaintiff . could recover from a solvent freight forwarder. The question remains whether the carrier may recover from the bankrupt freight forwarder's surety.

### III.

An independent freight forwarder is required by the Shipping Act to post a bond:

(c) The Commission shall prescribe reasonable rules and regulations to be observed by independent ocean freight forwarders and no such license shall be issued or remain in force unless such forwarder shall have furnished a bond or other security approved by the Commission in such form and amount as in the opinion of the Commission will insure financial responsibility and the supply of the services in accordance with contracts, agreements, or arrangements therefor.

46 U.S.C. § 841b(c).

The Independent Freight Forwarder's Bond contains the following provisions, which are required by 46 C.F.R. § 510.15:

Now, therefore, the condition of this obligation is such that if the Principal shall, while this bond is in effect, supply the services of an independent ocean freight forwarder in accordance with the contracts, agreements, or arrangements made therefor, then this obligation shall be void, otherwise to remain in full force and effect.

The liability of the Surety shall not be discharged by any payment or succession of payments hereunder, unless and until

such payment or payments shall aggregate the penalty of this bond, and in no event shall the Surety's total obligation hereunder exceed said penalty.

This bond shall inure to the benefit of any and all persons for whom the Principal shall have undertaken to act as an independent ocean freight forwarder.

There is a dearth of case law as to whether the carrier is a potential beneficiary of the surety's bond. This may be some indication that sureties automatically pay in situations where the carrier claims, so that the issue never reaches the case books.

Of course, the dearth of case law might also be some indication that the opposite proposition is true; that it is self-evident that the carrier is never a beneficiary.[1] I reject that proposition.

The significant word in the bond is "for": the bond exists for "the benefit of any and all persons *for* whom" the person at whose behest the bond is issued "shall have undertaken to act" as a freight forwarder.

Obviously, the freight forwarder acts for the shipper: on the shipper's behalf the freight forwarder may perform, *inter alia,* any or all of the following services; it may prepare and/or process export declarations; it may book, arrange for or confirm cargo space; it may prepare or process delivery orders or dock receipts; it may prepare consular documents; it may arrange for warehouse storage or cargo insurance. 46 C.F.R. § 510.2(h). For these and other services the independent freight forwarder is compensated by the shipper.

But the independent freight forwarder may also perform services for the carrier. If, having arranged for cargo space, it performs any two of the following services, the independent freight forwarder may be compensated for its services by the carrier, pursuant to 46 U.S.C. § 841b(e) and 46 C.F.R. § 510.33(c):[2]

coordinating the movement of the cargo to shipside;

preparing and processing the ocean bill of lading;

preparing and processing dock receipts or delivery orders;

preparing and processing consular documents or expert declarations;

paying the ocean freight charges.[3]

The plaintiff was billed by the freight forwarder for its services to plaintiff with respect to the three shipments, and plaintiff compensated the freight forwarder for those services.

■ Not only, therefore, does the statute (and the regulations thereunder) contemplate that the freight forwarder may undertake to act for the carrier in the sense of performing freight forwarding services for it, for which the forwarder may be compensated, but the evidence before me establishes that compensation for such freight forwarding services was paid by plaintiff carrier to the freight forwarder in the case at bar. Thus plaintiff carrier was a beneficiary of the independent freight forwarder's bond, since the bond inures to the bene-

---

1. At least one case seems to stand in refutation to this proposition. In *Inversiones Navieras Imparca v. Polysar Intern.,* 465 F.Supp. 102 (S.D.Fla.1979), a carrier sued the shipper, the freight forwarder, and the freight carrier's surety for recovery of freight charges. As in the instant case, the bill of lading was marked "Ocean Freight Prepaid," the shipper paid the forwarder, and the forwarder never remitted payment to the carrier. Collection from the freight forwarder's surety was allowed.

2. A 1981 amendment to the Shipping Act makes it clear that the freight forwarder may *not* receive compensation from the carrier if the forwarder has, directly or indirectly, a beneficial interest in the goods shipped:

A forwarder may not receive compensation from a common carrier with respect to any shipment in which the forwarder has a beneficial interest or with respect to any shipment in which any holding company, subsidiary, affiliate, officer, director, agent, or executive of such forwarder has a beneficial interest. 46 U.S.C. § 841b(f) (added by Pub.L. 97–35, Title XVI, § 1608(b), 95 Stat. 752 (Aug. 13, 1981)).

3. To receive compensation from the carrier, the freight forwarder must file a certification with the carrier that it has arranged for space for the cargo and has in addition performed at least two of the services listed. 46 C.F.R. 510.-33(c).

fit of anyone for whom the independent freight forwarder has acted.

## IV.

Defendant argues that even if plaintiff carrier is a beneficiary under freight forwarder Lacy's bond, the extension of credit by the carrier without the surety's consent took the arrangement out of the parameters of the surety's responsibilities. The so-called "extension of credit" entailed accepting the shipments with bills of lading marked "Ocean Freight Prepaid" when the freight was not in fact prepaid.

Nowhere in the surety bond requirements under 46 C.F.R. § 510.15 is concurrence by surety required for any activities conducted by the forwarder. Nor is it at all clear that the "credit" was extended to the freight forwarder: so far as plaintiff carrier was concerned the "credit" may have been intended to be extended to the shipper.

The surety bond extended to all of Lacy's activities as an independent freight forwarder. He received money from the shipper which he had an obligation to remit to the carrier and he did not remit it—his failure to remit occurred in the course of rendition of freight forwarding services and was a bonded event; the plaintiff carrier was a beneficiary of the bond and was injured by the failure to remit.

Logic suggests that the extension of credit by plaintiff carrier to freight forwarder Lacy, if that did in fact occur, makes plaintiff's claims against the surety even stronger. The whole purpose of a surety bond is to protect those who rely on the principal. Defendant, in the business of providing surety bonds, knowing the risks inherent in holding oneself out as a surety, cannot now claim that it is not responsible for debts directly flowing from the principal's provision of freight forwarding services. *See* Williston, *Contracts,* The Suretyship Relation § 1211 (3d Ed.).

SO ORDERED.