**MEDITERRANEAN SHIPPING CO., Plaintiff,**

**v.**

**ELOF HANSSON, INC. (OF SWEDEN) and Elof Hansson, Inc. (Of New York), Defendants.**

No. 87 Civ. 0468 (BN).

United States District Court, S.D. New York.

Aug. 29, 1988.

Deorchis & Partners, New York City, for plaintiff; Vincent M. DeOrchis, Craig V. Rasile, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendants; R. Glenn Bauer, Mark C. Flavin, Paul E. O'Brien, of counsel.

## MEMORANDUM OPINION

NEWMAN, Senior Judge United States Court of International Trade, sitting by designation:

### Introduction

In this admiralty case brought under 28 U.S.C. § 1333 plaintiff, Mediterranean Shipping Co. ("Mediterranean"), an ocean carrier based in Geneva, Switzerland, seeks recovery of $41,580.91 for unpaid freight charges under two bills of lading from defendant Elof Hansson, Inc. (Of Sweden) ("Hansson"), a commodities trading house and the shipper.[1] The two bills of lading under which plaintiff seeks to recover, state: "FREIGHT PREPAID." Plaintiff asserts that despite the fact the bills of lading show the freight charges were "PREPAID," plaintiff in fact did not receive payment, but rather extended credit to defendant. Hansson asserts that pursuant to its "Cost and Freight" ("C. & F.")[2] contract with its supplier, Fenesty, Inc. ("Fenesty"), and letter of credit in favor of the latter, Hansson paid Fenesty all freight charges due on the bills of lading in reliance upon their being marked prepaid by plaintiff's local agent, Containership Agency, Inc. ("Containership"). Unfortunately, Fenesty terminated its business without paying over to plaintiff the freight monies Fenesty had received from defendant under the C. & F. contract. Hansson insists that under these circumstances it should not be required to pay the freight charges twice.

Fenesty made the cargo booking for the shipments in question with Containership through Leyden Shipping Corp. ("Leyden"), a New York based freight forwarder.[3] Containership's action in this case will be deemed the action of its principal, Mediterranean.

### The Record

As a preliminary matter, the court notes the parties requested that the court proceed under Local Admiralty Rule 16 for a summary determination and submitted depositions and other documentary evidence. However, the court declined to proceed under Rule 16 because plaintiff's claim exceeds the $25,000 limitation imposed by the rule. *See* Order filed June 20, 1988.

A nonjury trial was held on August 17, 1988 at which the parties, by agreement, submitted solely the depositions and other documentary evidence previously presented under Local Rule 16.

The record includes the depositions of the following persons to which reference is made herein:

1. Lars Edlund, Vice President in charge of the Shipping Division of Hansson (Exh. 1).

2. Allen Clifford, a Line Manager for Containership (Exh. 2).

---

1. At trial, plaintiff dismissed this action as to Elof Hansson, Inc. (Of New York). All references herein to "defendant" or "Hansson" refer solely to Elof Hansson, Inc. (Of Sweden).

2. The abbreviated term "C. & F." means: the contract price includes the cost of the goods and the freight charges to the named destination. *See* U.C.C. § 2–320.

3. When this action was commenced, Leyden was joined with Hansson as a co-defendant, but subsequently plaintiff voluntarily dismissed this action, without prejudice, as against Leyden. *See* Order of Judge Daronco filed September 10, 1987.

   Although Leyden booked the shipments in the name of Fenesty, there is no dispute that Hansson was the shipper of record on the bills of lading.

3. Brian S. Leyden, Vice President and Secretary of Leyden (Exh. 3).

4. Nicola Arena, Vice President of Containership (Exh. 4).

After presentation of oral arguments, the court informed counsel that judgment would be entered for defendant dismissing the complaint with written findings of fact and conclusions of law to follow. This memorandum opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 52(a), Fed.R. Civ.P.

*Findings and Conclusions*

I.

In November 1985 Hansson purchased thirty containers of polypropylene granules from Fenesty on a C. & F. basis to be shipped by Fenesty from Houston, Texas to Dar Es Salaam, Africa (Exh. 1, pp. 30–32; Exh. 10; Exh. B, telex dated November 26, 1985). On December 20, 1985 fourteen containers were placed aboard the M/V Tumilco for carriage from Houston to Dar Es Salaam. The freight charge for this shipment was $27,715.43 under bill of lading No. 1604 (Exh. 5).

On January 14, 1986 seven containers of the polypropylene granules were placed aboard the M/V Tuxpan for carriage. The freight charge for this shipment was $13,-865.78 under bill of lading No. 1036 (Exh. 7).[4]

■ Hansson arranged for payment to Fenesty through a Swedish bank under a letter of credit: payment was to be made to Fenesty under the letter of credit upon presentation of certain documents, including three bills of lading marked "freight prepaid" and indicating "Elof Hansson" as shipper. (Exh. 1, p. 32; Exh. 9). Although Leyden booked the shipments with Containership in Fenesty's name, Hansson insisted upon appearing as shipper on the bills of lading because Hansson did not wish to reveal the name of the supplier, Fenesty, to the ultimate buyer of the goods, Kabwe

Industrial Fabrics, Ltd. (Exh. 1, p. 28). Hansson's designation as shipper on the bills of lading is standard operating procedure for Hansson (*Id.*), and generally it is customary practice in the shipping industry not to reveal a supplier's name on a bill of lading (Exh. 1, p. 46). Plaintiff's bald assertion at oral argument that Fenesty was acting as an agent of Hansson is completely without merit. The only relationship between Fenesty and Hansson established by the record is that of seller and buyer under the C. & F. contract.

Fenesty turned to Leyden to arrange for shipment of the polypropylene granules to Dar Es Salaam. Leyden contacted Containership, negotiated a freight rate, and made a cargo booking on behalf of Fenesty (Exh. 2, pp. 15, 23). Further, Fenesty prepared the bills of lading marked "freight prepaid" which were then forwarded directly to and issued by Containership without payment of the freight charges (Exh. 3, pp. 13, 23). The decision to release these prepaid bills of lading without any credit arrangement having been effected with Hansson was made unilaterally by personnel at Containership (Exh. 2, pp. 59–60) "in order to remain competitive" (Exh. 4, p. 7). No evidence was submitted by plaintiff of any credit arrangement with Hansson in the form of "Outward Freight Bills" or in any other format. *See Farrel lines, Inc. v. Titan Indust. Corp.*, 306 F.Supp. 1348, 1350 (S.D.N.Y.), *aff'd on opinion below*, 419 F.2d 835 (2d Cir.1969), *cert. denied*, 397 U.S. 1042, 90 S.Ct. 1365, 25 L.Ed.2d 653 (1970) (*"Farrell I"*).

■ A shipper may enter into a "loyalty" contract with a "conference" of carriers in which he agrees to ship exclusively on conference vessels in exchange for reduced rates. *See* 46 U.S.C. § 813a. Further, as observed in *Strachan Shipping Co. v. Dresser Industries Inc.*, 701 F.2d 483 (5th Cir.1983):

> Besides the loyalty contract, the conference also provides credit agreements. The general purpose of a conference

---

4. A third bill of lading, No. 1609, accounts for the remaining nine containers. The freight charge on this bill of lading was paid by Fenesty to plaintiff (Exh. 13) and is not in dispute in this lawsuit.

credit agreement is to provide for bills of lading marked prepaid prior to receipts of payment by the carrier. The release of the bill of lading is in essence an extension of credit by the carrier to the shipper. The shipper agrees to pay within a certain time after the ship sails. *Id.* at 485.

Plaintiff, concededly, is not a signatory to the North Atlantic Conference (Exh. 4, p. 7), and consequently no formal credit arrangement between the parties may be predicated on a conference credit agreement.

■ Contrary to Arena's deposition testimony that Leyden had requested an extension of credit on behalf of Hansson (Exh. 4, p. 31), Leyden testified that he had never heard of Hansson until this lawsuit (Exh. 3, pp. 8, 30), and in any event Leyden was never employed by or acted as an agent of Hansson. While Hansson had previously done business with Mediterranean, at no time prior to November 1986 did Hansson ever communicate with Leyden, Mediterranean, or Containership regarding the subject shipments (Exh. 2, p. 73; Exh. 3, p. 8; Exh. 4, p. 19).

In short, the court finds that Hansson never desired, requested, knowingly received or benefited from the purported extension of credit by Containership to Hansson covering the subject prepaid bills of lading. It is plain from the record that because of the excellent reputations of Hansson and Leyden, Containership merely "assumed" that the freight charges would somehow be paid (Exh. 13, p. 2; Exh. 2, pp. 54–56, 59–60, 78–79), but in point of fact there were no credit arrangements whatever between the parties.[5] Under these circumstances, the court finds that the release of the prepaid bills of lading by Containership did not constitute an extension of credit to Hansson.

## II.

In the shipping industry, a bill of lading acknowledging that freight has been prepaid normally means that the carrier has received payment of the freight charges from the shipper prior to release of the bills of lading. However, it is not unusual for carriers to release bills of lading marked "freight prepaid" without actual payment of the freight charges where the carriers have a formal credit agreement with shippers or other credit relationship with freight forwarders (Exh. 1, pp. 36–37; Exh. 3, p. 17; Exh. 4, p. 26). *See, e.g., Farrell I; Farrell Lines, Inc. v. American Motorists Ins. Co.,* 572 F.Supp. 939 (S.D.N.Y.1983), *aff'd on opinion below,* 728 F.2d 147 (2d Cir.1984); *Evergreen Line v. Interstate Paper Sales Co.,* 1981 A.M.C. 2146 (S.D.N.Y. April 7, 1981); *Koninklijke Nedlloyd BV v. Uniroyal, Inc.,* 433 F.Supp. 121 (S.D.N.Y.1977). *See also Compania Sud Americana De Vapores v. Atlantic Caribbean Shipping Co.,* 587 F.Supp. 410, 412 (S.D.Fla.1984); *Naviera Mercante S.A. v. Northrup King Co.,* 491 F.Supp. 508 (S.D.Tex.1980); *Inversiones Navieras Imparca, C.A. v. Polysar Int'l. S.A.,* 465 F.Supp. 102 (S.D.Fla.1979); *Alcoa S.S. Co. v. Graver Tank & Mfg. Co.,* 1953 A.M.C. 844, 124 N.Y.S.2d 77 (N.Y.City Ct.1953).

■ Here, as we have noted, Containership not only released the bills of lading to Fenesty marked "freight prepaid," but there is no evidence that plaintiff had any credit agreement with defendant;[6] and defendant was not even apprised that plaintiff intended to extend credit until November 1986—nearly ten months after issuance of the subject bills of lading during which period plaintiff was pursuing Leyden for

---

5. Interestingly, as a result of this lawsuit, Containership changed its procedure for extending credit on prepaid bills of lading. Presently, extensions of credit are made only pursuant to a written request of a shipper or freight forwarder (Exh. 4, p. 28).

6. The court is unable to agree with defendant that there was an extension of credit to Leyden. Although plaintiff initially sought payment from Leyden, there is no evidence that Leyden exchanged due bills for the prepaid bills of lading or that plaintiff otherwise extended credit to the freight forwarder. Moreover, Leyden never received the freight monies from defendant. Accordingly, defendant's contention that plaintiff extended credit to Leyden is not supported by *Farrel I, Evergreen* or *Uniroyal.*

payment.[7] Furthermore, and understandably, defendant relied upon the prepaid bills of lading in paying the freight monies to Fenesty under a letter of credit requiring that freight prepaid bills of lading be presented. Defendant contends, therefore, that plaintiff should be estopped from claiming that freight charges have not been paid.

### III.

■ Hence, the pivotal question is whether the principle of equitable estoppel should be invoked to preclude plaintiff's recovery of freight on the prepaid bills of lading and the double payment of freight by defendant. The court finds that equitable estoppel should be applied in the instant case.

Fundamentally, of course, the bill of lading is a contract of carriage. *Asbestos Corp. v. Compagnie De Navigation Fraissinet Et Cyprien Fabre*, 345 F.Supp. 814, 819 (S.D.N.Y.1972), *aff'd*, 480 F.2d 669 (2d. Cir.1973). *See also Waterman S.S. Corp. v. 350 Bundles of Hardboard*, 603 F.Supp. 490 (D.Mass.1984). Plaintiff argues that under the subject bills of lading the shipper is liable to the carrier for ocean freight charges no matter how inequitable the conduct of the carrier or its agent, even where this results in double payment. In that connection plaintiff relies upon *Flota Mercante Gran Columbiana S.A. v. Florida Constr. Equip. Inc.*, 798 F.2d 143, 145 (5th Cir.1986); *Bartlett–Collins Co. v. Surinam Navigation Co.*, 381 F.2d 546, 549 (10th Cir.1967); *Compania Anomia Venezolana De Navegacion v. A.J. Perez Export Co.*, 303 F.2d 692, 696 (5th Cir.), *cert. denied*, 371 U.S. 942 (1962). *See also Strachan Shipping Co.*, 701 F.2d at 489 (carrier did not relieve shipper from liability notwithstanding carrier's initial efforts to collect from freight forwarder).

The court disagrees with plaintiff's position and declines to follow the rationale in the above-cited cases, which "absolutist approach" has been rejected in the Second Circuit and in several other cases. *See Farrell I*, 306 F.Supp. at 1349; *Compania*, 587 F.Supp. at 412–13; *Naviera Mercante*, 491 F.Supp. at 510; *Inversiones*, 465 F.Supp. at 103; *Uniroyal*, 433 F.Supp. at 127. *See also Naviera Neptuno*, 709 F.2d at 665 n. 3.

The Supreme Court, while disfavoring judicial application of affirmative defenses against carriers in I.C.C. credit regulation cases, has carved out a special category for the so-called "double payment" cases: "Each and all of them involved a carrier's misrepresentation, such as false assertion of prepayment on a bill of lading, upon which the consignee detrimentally relied only to find itself later sued by the carrier for the same charges." *Southern Pac. Trans. Co. v. Commercial Metals Co.*, 456 U.S. 336, 351, 102 S.Ct. 1815, 1824, 72 L.Ed. 2d 114 (1982). And "[t]he Court in *Southern Pacific* did not foreclose implication of an affirmative defense to the *shipper* ... in the so-called 'double payment' cases." *Flota*, 798 F.2d at 147 n. 1 (emphasis added).[8] The parties have not cited and this court's research has failed to discover any prior reported decisions involving the application of equitable estoppel on behalf of a shipper that paid the freight to a supplier in reliance on prepaid bills of lading; and from that perspective this case is one of first impression. The court finds that although defendant as the shipper of record incurred liability for the freight charges on the bills of lading, the present case, which involves prepaid bills of lading, is an appropriate one for the application of equitable estoppel where otherwise unjustifiably there would be liability by defendant for double payment.

---

7. This lack of notice of any intention by plaintiff to extend credit to the shipper is significant since there is no evidence in the record that as a matter of local custom the stamping of a bill of lading "freight prepaid" when in fact the freight was not prepaid is an extension of credit to the shipper. *Cf. Naveria Neptuno All Int'l. Freight Forwarders*, 709 F.2d 663, 665 (11th Cir.1983).

8. One of the so-called "double-payment" cases cited by the Supreme Court for the application of affirmative defenses against carriers is the decision of the Second Circuit in *Farrel I* involving a suit against a *shipper* rather than a consignee.

Hansson's letter of credit (Exh. 9) required Fenesty to present "freight prepaid" bills of lading. Essentially, then, it was in reliance upon these "prepaid" bills of lading that Hansson paid Fenesty under the letter of credit in conformance with their C. & F. contract. That contract required Fenesty to ship the merchandise under prepaid bills of lading, and clearly *Hansson as a matter of law was entitled to rely upon plaintiff's marking the bills prepaid.* *See* U.C.C. § 2–320(2)(b).

Since the bills of lading were not marked "freight collect," Hansson, as the purchaser of the merchandise under a C. & F. contract, was entitled to receive from Fenesty, the seller, documentary evidence that Hansson was not obligated to pay the freight. Fenesty, therefore, under its C. & F. contract with Hansson was required to obtain a receipt "showing that the freight has been paid or provided for." U.C.C. § 2–320(2)(b).[9] *See Waterman,* 603 F.Supp. at 492. As pointed out in Note 5 of the Official Comments to section 2–320, "The usual notation in the appropriate space on the bill of lading that the freight has been prepaid is a sufficient receipt, as at common law." Consequently, then, as a matter of law Hansson was entitled to rely on the prepaid bills of lading as evidence of payment. Moreover, there can be no doubt that in fact Hansson relied on the prepaid bills of lading as proof that the freight charges had been paid by Fenesty. *See* Exh. 1, pp. 44–46. As previously mentioned, plaintiff never informed defendant that the former intended to extend the latter credit and defendant did not benefit from plaintiff's lax credit practices.

Concededly, where credit arrangements have been entered into with shippers, carriers customarily issue bills of lading marked "freight prepaid" without payment of the freight charges and thus extend credit to the shippers. Here, however, since plaintiff had no credit agreement with defendant, marking the bills of lading "freight prepaid," when in fact there was no pay-

ment, constituted a misrepresentation by plaintiff and defendant relied upon the misrepresentation of payment on the bills of lading. In addition to plaintiff's marking the bills of lading "freight prepaid," there is nothing in the record to charge Hansson with notice that plaintiff intended to unilaterally extend credit to defendant upon release of the "prepaid" bills of lading to Fenesty. The short of the matter is Hansson never requested, expected or desired any extension of credit on the subject bills of lading.

While plaintiff cannot be charged with notice of the C. & F. contractual arrangement between Hansson and Fenesty, nonetheless it is equitable that plaintiff, which chose to issue the prepaid bills of lading without payment and astonishingly, without even a credit agreement with defendant, should bear the risk of loss. In light of U.C.C. § 2–320, it would be absurd to hold that defendant was under a duty to require Fenesty to submit proof of payment in addition to the bills of lading marked "freight prepaid," or was under a duty to double-check with plaintiff to learn whether the bills of lading were actually prepaid, as represented on their face. *See Consolidated Freightways Corp. of Del. v. Admiral Corp.,* 442 F.2d 56, 60 (7th Cir. 1971). *See also Southern Pac. Transp. Co. v. Campbell Soup Co.,* 455 F.2d 1219 (8th Cir.1972); *Missouri Pac. R.R. Co. v. National Milling Co.,* 409 F.2d 882 (3d Cir.1969). The affirmative defense of equitable estoppel in prepaid freight cases was acknowledged by the Second Circuit in *In Re Roll Products, Inc.,* 662 F.2d 150, 154 n. 7 (2d Cir.1981), citing the *Consolidated Freightways* and *Campbell Soup* cases.

Finally, during oral argument plaintiff's counsel called the court's attention to the recent decision in *Sea–Land Serv., Inc. v. Amstar Corp.,* 690 F.Supp. 246 (S.D.N.Y. 1988), wherein judgment was entered for the ocean carrier against the shipper for unpaid freight charges on shipments of re-

**9.** Under this section, the phrase "provided for" is intended to cover certain situations where the carrier extends credit to a "shipper." *See* Note 5 in the Official Comments to section 2–320. For purposes of the foregoing section, the seller under a C. & F. contract is the "shipper" *vis-a-vis* the carrier.

fined sugar. *Sea Land*, however, is entirely inapposite to the present litigation since that case does not involve the issue of whether the carrier should be equitably estopped because it issued false prepaid bills of lading upon which the shipper relied in disbursing payment to its supplier under a letter of credit.

Interestingly, in *Sea–Land*, the court found the shipper liable where: (1) all shipments were carried under bills of lading providing that "Payment of ocean freight and charges to a freight forwarder, broker or anyone other than Sea–Land Service, Inc. or its authorized agent shall not be deemed payment to the Carrier and shall be made at payor's sole risk ..."; (2) the tariffs that applied to the shipments provided that the carrier could extend credit when evidence of financial security was furnished; (3) Amstar was an established customer of *Sea–Land* and the latter had been extending credit to Amstar since 1972; (4) *Sea–Land* had attempted to arrange for direct billing to Amstar, but Amstar rejected the proposal; and (5) Amstar was on notice that its freight forwarder (to whom Amstar had paid the freight monies) was misappropriating the payments.

In sum, none of the foregoing pertinent factors upon which the court predicated the shipper's liability in *Sea–Land* are present here, and significantly the equitable estoppel issue arising from prepaid bills of lading was not before the *Sea–Land* court.

### Conclusion

The subject bills of lading were marked by plaintiff "freight prepaid" and such marking was relied upon by defendant in paying Fenesty (its supplier) the freight money under a letter of credit in conformance with the C. & F. contract. Under U.C.C. § 2–320(2)(b) defendant, as a matter of law, was entitled to rely upon the receipt for payment of freight in the bills of lading; in point of fact, defendant relied upon the prepaid bills of lading in paying Fenesty. There was no extension of credit by plaintiff to defendant, since there was no credit agreement between the parties, and defendant never desired, requested or knowingly received the purported extension of credit by Containership.

Under the unfortunate circumstances of this case, plaintiff's lax marking of the bills of lading "freight prepaid" constituted a misrepresentation to defendant that the freight had been paid or provided for. In view of defendant's reliance upon plaintiff's misrepresentation, the court concludes that the principle of equitable estoppel is applicable to preclude a double payment of the freight charges by defendant.

The Clerk of the Court shall enter judgment for defendant pursuant to Rule 58, F.R.Civ.P. that all relief sought by plaintiff be denied.