**Richard LEE, Trustee, Plaintiff–Appellant,**

v.

**ARROWPAC, INC., Defendant–Appellee.**

Civ. No. 92–2185 (JP).

United States District Court, D. Puerto Rico.

March 13, 1995.

Eldia M. Díaz Olmo, Lasa, Escalera & Reichard, San Juan, PR, for plaintiff-appellant.

Raymond P. Burgos Santiago, San Juan, PR, for defendant-appellee.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it an appeal pursuant to 28 U.S.C. § 158(a) (1993) from the Bankruptcy Court's Opinion and Order granting defendant's motion for summary judgment. The issue before the Court is whether the mark of "freight is prepaid" on the face of the debtor's bill of lading is sufficient evidence to demonstrate that the freight charges had in fact been paid prior to shipment of the goods. The Bankruptcy Court determined the issue in the affirmative, and granted defendant's motion for summary judgment reasoning that if the debt had been prepaid, the debtor could not sustain a subsequent action for collection of the debt. After carefully reviewing the record and the arguments presented, the Bankruptcy Court's decision is hereby **AFFIRMED.**

## I.  BACKGROUND

Neither party contests the Bankruptcy Court's findings of facts, summarized as follows. Arrowpac, a New Jersey corporation, contracted with Carolina Steamship, Inc., to transport cargo from North Carolina to its subsidiary corporation, Arrow Carrier, in Puerto Rico. On June 23, 1987, Carolina Steamship, the carrier, picked up the goods from Arrowpac, the shipper, and delivered the goods to Arrow Carrier, the consignee. Upon delivery of the cargo, Carolina Steamship issued a bill of lading, which indicates that urgent delivery was required and that the amount of freight charges was $3,196.00.

There is also a mark of "FREIGHT IS PRE-PAID" stamped in the portion of "description of packages and goods", and an "X" in the section "Terms: Prepaid".

Two months after the delivery of the merchandise, Carolina Steamship was experiencing financial difficulties. It filed a petition under Chapter 11 of the Bankruptcy Code (the "Code") to reorganize its debt structure. Soon thereafter, Carolina Steamship converted its Chapter 11 petition for reorganization to a Chapter 7 petition for liquidation. A bankruptcy trustee was appointed to gather together all the assets of the debtor estate, sell the assets, and satisfy the debts of Carolina Steamship's existing creditors with the proceeds of the assets.

As part of the collection efforts of Carolina Steamship's accounts receivables, the trustee sent Arrowpac two separate letters alleging that Arrowpac had never paid the freight charges incurred in the June 1987 shipment and demanding the payment of $3,196.00. As payment was not forthcoming, the trustee filed a complaint in the Bankruptcy Court for the collection of the freight charges. Thereafter, Arrowpac filed a Motion for Summary Judgment,[1] alleging that the claim must be barred either because the statute of limitations for the collection of freight charges had expired, or alternatively, because the doctrine of laches prevented the collection of a debt so long after it had been incurred. Prior to ruling on the motion, the Bankruptcy Court entered an order stating in pertinent part:

> The bill of lading that accompanies Arrowpac's Motion shows that the freight charges of $3,196.00 claimed in the complaint appear to be prepaid. If this is correct, the complaint should be dismissed for this reason. Since the parties have not addressed this question, the Court hereby orders them to do it simultaneously within 30 days.

In response to this order, each party submitted a memorandum of law discussing the significance of the prepaid mark. After considering all the evidence provided by the parties, the Bankruptcy Court granted the motion for summary judgment, reasoning that the freight is prepaid mark evidenced that the freight charges had been paid. Since the debt had already been discharged, the trustee was precluded from collecting the freight charges twice.

The trustee appeals, arguing that the Bankruptcy Court erred in finding that the bill of lading was sufficient evidence that the freight charges had been paid. Appellant contends that the "prepaid" mark signifies only that the carrier should look exclusively to the shipper-consignor for payment, not that the freight charges had been paid. Further, appellant argues that prepayment of the freight charges is an affirmative defense to the collection of a debt. As appellee did not raise the affirmative defense in their answer to the complaint, the defense has been waived.

Appellee asserts that the freight charges were paid, as evidenced by the "freight is prepaid" mark on the face of Carolina Steamship's bill of lading. Further, the bill of lading, submitted with its motion for summary judgment, was sufficient to shift the burden back to plaintiff-appellant to show that the debt had not, in fact, been paid. Plaintiff failed to produce any evidence which would demonstrate that the debt had not been paid. Therefore, appellee argues, the Bankruptcy Court correctly entered summary judgment after finding that there was no genuine issue of material fact regarding whether or not the alleged debt had been discharged.

## II. DISCUSSION

There are two issues on appeal. First, whether the Bankruptcy Court erred in determining that a prepaid mark on a bill of lading signifies that the carrier has received payment for freight charges from the shipper prior to the shipment of the cargo. Second, whether the Bankruptcy Court erred in raising the significance of the prepaid mark sua sponte, since the payment of the debt is an affirmative defense which, having not been raised in defendant's answer to the complaint, had been waived.

---

1. The Bankruptcy Court considered defendant's motion entitled "Motion to Dismiss/Or Summary Judgment," as one for summary judgment.

## A. THE MEANING OF THE PREPAID MARK

■ A bill of lading is the basic contract of carriage between the shipper and the carrier. *Southern Pacific Transp. Co. v. Commercial Metals Co.* 456 U.S. 336, 343, 102 S.Ct. 1815, 1820–21, 72 L.Ed.2d 114 (1982). The terms and conditions of the bill of lading bind the shipper and all connecting carriers. *Texas & P.R. Co. v. Leatherwood,* 250 U.S. 478, 481, 39 S.Ct. 517, 518, 63 L.Ed. 1096 (1919). Carolina Steamship's bill of lading had two separate markings printed on the front of the document: an "X" in the box responding to whether the freight charges had been prepaid in the "Terms" section, and a "freight is prepaid" stamp in the description of goods section. The particular significance of these markings are central to the questions before this Court.

■ The trustee argues that prepaid marks have a special meaning in the shipping industry, and that it is within this context that the bill of lading must be interpreted. Specifically, appellant argues that certain terms define which party has assumed responsibility for payment of the freight charges. A stamp of "collect freight" on a bill of lading signifies that the consignee has assumed responsibility for payment, whereas "freight is prepaid" signifies that the shipper will pay the freight charges. *See Koninklijke Nedlloyd BV v. Uniroyal, Inc.,* 433 F.Supp. 121, 129 (S.D.N.Y.1977). *See also Sea–Land Service, Inc. v. Andrew Corp.,* 1992 WL 41344, at *3–4, 1992 U.S.Dist. LEXIS 2092, at *9–10 (N.D.Ill. Feb. 25, 1992). Therefore, the trustee argues that the "FREIGHT IS PREPAID" mark on Carolina's bill of lading means *only* that Arrowpac, as the shipper, had assumed the legal responsibility to pay the freight charges.

■ The question at issue, however, is not who had the responsibility to pay for the charges, rather whether the freight charges were in fact paid. According to the plain meaning of the mark, a bill of lading stamped prepaid suggests that the shipper has paid the freight charges to the carrier *before* the carrier released the bill of lading. "In the shipping industry, a bill of lading acknowledging that freight has been paid normally means that the carrier has received payment of the freight charges from the shipper prior to release of the bills of lading." *Mediterranean Shipping Co. v. Elof Hansson, Inc.,* 693 F.Supp. 80, 83 (S.D.N.Y.1988).

■ Furthermore, Carolina Steamship drafted and signed its own bill of lading. Any ambiguity concerning the meaning of the prepaid mark will be construed against Carolina Steamship, because a bill of lading is a contract of adhesion and as such, is strictly construed against the carrier. *C–ART, Ltd. v. Hong Kong Islands Line America, S.A.* 940 F.2d 530 (9th Cir.1991), *cert. denied,* 503 U.S. 1005, 112 S.Ct. 1762, 118 L.Ed.2d 425 (1992). *Interocean S.S. Corp. v. New Orleans Cold Storage & Warehouse Co.,* 865 F.2d 699 (5th Cir.1989); *Allied Chemical Int'l. Corp. v. Companhia De Navegacao Lloyd Brasileiro,* 775 F.2d 476, 482 (2d Cir. 1985), *cert. denied,* 475 U.S. 1099, 106 S.Ct. 1502, 89 L.Ed.2d 903 (1986). Therefore, the prepaid mark means that the freight charges had been paid before Carolina Steamship released the bill of lading to Arrow Carrier.

Despite the plain meaning of the terms, the trustee argues that it is customary in the shipping industry for carriers to release a bill of lading marked prepaid, when in fact the freight charges have not been paid. *Naviera Mercante, S.A. v. Northrup King Company,* 491 F.Supp. 508, 510 (1980). This custom, however, primarily exists where the shipper and the carrier have entered into a formal credit agreement.[2] Trustee has presented no evidence that Arrowpac had entered into a formal credit agreement with Carolina Steamship, or that they had a continuous business relationship. Absent evidence to the contrary, there is no reason to disregard the plain meaning of the prepaid mark in the shipper and carrier's contract.

By submitting Carolina's bill of lading, Arrowpac met its burden in a motion for summary judgment to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,*

2. "[I]t is not unusual for carriers to release bills of lading marked 'freight prepaid' without actual payment of the freight charges where the carriers have a formal credit agreement with shippers or other credit relationship with freight forwarders." *Mediterranean,* 693 F.Supp. at 83.

477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifted to the trustee to provide the court with "some indication that he can produce the quantum of evidence to enable him to reach the jury with his claim." *Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). He needed to provide something more than mere allegations or denial of the pleadings. Fed.R.Civ.P. 56(e).[3] The trustee had the burden to affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *First National Bank v. Cities Service Co.,* 391 U.S. 253, 288–89, *reh'g denied,* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968). The trustee failed to provide the Court with affirmative evidence that despite the marking of prepaid on the face of the bill of lading, the freight charges had not been paid. Therefore, the bankruptcy court correctly concluded that the freight charges having been paid, the trustee in bankruptcy has no further cause of action to collect an extinguished debt.

In interpreting the Bankruptcy Court's Opinion and Order, the trustee mistakenly concludes that the court relied on the doctrine of equitable estoppel in order to preclude the trustee from seeking payment of the freight charges. However, the Bankruptcy Court never mentions the doctrine of equitable estoppel in its Opinion and Order. The doctrine applies only in actions where the carrier seeks to collect the freight charges from the consignee of the goods rather than from the shipper. In the case at bar, the trustee is suing the shipper, not the consignee. Therefore, the doctrine of equitable estoppel is not applicable. The trustee is precluded from seeking collection of the charges, not because it would be unfair to a third party, but because the charges were already paid.

## B. THE VALIDITY OF THE BANKRUPTCY COURT'S ORDER

Appellant maintains that the Bankruptcy Court erred in *sua sponte* asking the

parties to address the significance of the "prepaid" mark on the face of the bill of lading. Appellant contends that the court's action was equivalent to allowing Arrowpac to raise an affirmative defense which Appellee had already waived by failing to raise it in its motion for summary judgment and its answer to the complaint.

The trustee correctly states that affirmative defenses must be set forth in a responsive pleading. *See* Fed.R.Civ.P. 8(c). "The purpose of the rule ... is to avoid surprises." *Valle v. Heirs of Julio Wiscovitch & The Globe Indemnity Co.,* 88 P.R.R. 84, 88 (1963). Affirmative defenses which are not raised in the first responsive pleading are generally waived and may not be raised at a later date. However, whether or not an affirmative defense has been waived is of no consequence when a court raises the issue sua sponte. *See Leonhard v. United States* 633 F.2d 599, 609 n. 11 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981) (district court can dismiss a complaint sua sponte for failure to state a claim upon which relief can be granted or the elapse of the statute of limitations). Furthermore, "[I]t is not an abuse of discretion for a district court to receive and consider evidence in support of an affirmative defense that a defendant has failed to plead." *Mitchell v. Jefferson County Bd. of Educ.,* 936 F.2d 539, 543, *reh'g, en banc, denied,* 946 F.2d 1549 (11th Cir.Ala.1991) (citing *Hassan v. U.S. Postal Service,* 842 F.2d 260, 263 (11th Cir.1988)). To hold otherwise would be to favor the hypertechnicality of procedural rules over substantive justice.

In its December 27, 1991 Order, the Bankruptcy Court raised the significance of the "prepaid" mark on the bill of lading which was submitted as an exhibit to defendant's motion for summary judgment. The Bankruptcy Court explicitly informed both sides that it would dismiss the case if it found that the mark demonstrated conclusively that the debt had been paid. "[D]istrict courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long

---

**3.** Rule 7056 of the Federal Rules of Bankruptcy Procedure makes the Federal Rules of Civil Procedure applicable to bankruptcy proceedings.

as the losing party was noticed that she had to come forward with all her evidence." *Celotex Corp v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Each party was aware of the possibility of dismissal depending on the resolution of this issue, and each party had an opportunity to argue whether the case should be or should not be dismissed based on the prepaid mark.

## III. CONCLUSION

The "freight is prepaid" marking on the bill of lading evidenced that the shipper paid the freight charges before the carrier released the bill of lading. Therefore, the trustee was precluded from collecting the freight charges from the shipper again. In raising the significance of the mark sua sponte, the Bankruptcy Court gave each side ample opportunity to brief and argue the question of the significance of the mark. For the foregoing reasons, the Opinion and Order of the Bankruptcy Court is hereby **AFFIRMED.**

IT IS SO ORDERED.